**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

PETER ALLEN SARRACINO,

    Petitioner,

v.   No.   CV 16-734 MCA/CG
                  CR 95-210 MCA

UNITED STATES OF AMERICA,

    Respondent.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on United States Magistrate Judge Carmen E. Garza's *Proposed Findings and Recommended Disposition* (the "PFRD"), (CV Doc. 16), filed June 26, 2017; Petitioner Peter Allen Sarracino's *Objections to Proposed Findings and Recommended Dispositions* (the "Objections"), (CV Doc. 17), filed July 11, 2017; and Respondent United States of America's *Response to Peter Sarracino's Objections to Proposed Findings and Recommended Disposition* (the "Response"), (CV Doc. 18), filed July 13, 2017.[1] Not before the Court is Petitioner's *Reply to United States' Response to Mr. Sarracino's Objections to Proposed Findings and Recommended Dispositions*, (CV Doc. 19), because the applicable rules of procedure do not allow replies to objections to a PFRD. *See* 28 U.S.C. § 636(b); FED. R. CIV. P. 72(b) (allowing objections and responses, but not replies).

In the PFRD, the Magistrate Judge recommended denying Petitioner's *2255 Motion to Vacate Illegal Career Offender Sentence Under* Johnson v. United States, (the "Motion"), (CV Doc. 1), because Petitioner was not sentenced in reliance on the

---

[1] Citations to "CV Doc. __" refer to documents in case number CV 16-734 MCA/CG. Citations to "CR Doc. __" refer to documents in case number CR 95-210 MCA.
.

residual clause in United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 4B1.2 (1995).[2] (CV Doc. 16 at 22-23). The parties were notified that written objections to the PFRD were due within 14 days. *Id.* at 23. Petitioner timely objected to the PFRD, and Respondent timely responded to those objections. *See* Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts; Fed. R. Civ. P. 72(b)(2). Following *de novo* review of the PFRD, Objections, Response, and the record, the Court will overrule Petitioner's objections, adopt the PFRD, and deny Petitioner's Motion.

   I.   **Background**

On January 16, 1996, a jury found Petitioner guilty of kidnapping and second degree murder in violation of federal law. (CR Docs. 96, 97). Petitioner's Presentence Report (PSR) found Petitioner was a "career offender" under the Sentencing Guidelines based on Petitioner's conviction for second degree murder and his prior convictions for assault with a dangerous weapon under federal law and voluntary manslaughter under New Mexico law. (CV Doc. 1 at 2; CV Doc. 12 at 2). Ultimately, Petitioner received two concurrent life sentences. (CR Doc. 127).

On June 27, 2016, Petitioner filed the instant Motion, arguing his designation as a career offender and subsequent sentence violated his rights to due process as articulated in *Johnson v. United States*, 135 S. Ct. 2551 (2016). (CV Doc. 1 at 1). In *Johnson*, the Supreme Court of the United States held that the so-called "residual clause" in the Armed Career Criminal Act ("ACCA") was unconstitutionally vague and may not be relied on in imposing an enhanced sentence. *Johnson*, 135 S. Ct. at 2556-

---

[2] Citation to the Guidelines throughout this Memorandum Opinion and Order are to the 1995 version of the Guidelines, which were in effect when Petitioner was sentenced.

2

57. Petitioner claims he was sentenced in reliance on the residual clause in Guidelines § 4B1.2, which is identical to the residual clause in the ACCA and which, Petitioner argues, must also be unconstitutionally vague. (CV Doc. 1 at 5). Although the Supreme Court held that the residual clause in the advisory Guidelines is not unconstitutionally vague in *Beckles v. United States*, 137 S. Ct. 886, 896 (2017), Petitioner argues that *Beckles* does not apply to him because the Guidelines were mandatory, rather than advisory, when he was sentenced. (CV Doc. 11 at 3-9). Finally, Petitioner argues that his predicate crimes were not "crimes of violence" except under the residual clause. (CV Doc. 1 at 6-13).

In the PFRD, the Magistrate Judge first agreed that *Beckles* does not apply in this case because Petitioner was sentenced when the Guidelines were mandatory rather than advisory. (CV Doc. 16 at 4-7). Next, the Magistrate Judge found that *Johnson* applies retroactively because it announced a substantive rule; therefore, Petitioner could be resentenced if he were sentenced in reliance on the residual clause. (CV Doc. 16 at 7-11). But the Magistrate Judge disagreed that Petitioner's predicate crimes were not crimes of violence except under the residual clause. Instead, all three were crimes of violence under the "elements clause" in Guidelines § 4B1.2(1)(i). (CV Doc. 16 at 11-22). Accordingly, the Magistrate Judge concluded Petitioner's designation as a career offender and resulting sentence were not based on the residual clause and were not unconstitutional; therefore, Petitioner's Motion should be denied. (CV Doc. 16 at 22-23). Petitioner's Objections and Respondent's Response followed.

**II.     Analysis**

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings for the

United States District Courts, a district judge may, under 28 U.S.C. § 636(b), refer a pretrial dispositive motion to a magistrate judge for proposed findings of fact and recommendations for disposition. Within fourteen days of being served, a party may file objections to this recommendation. Rule 8(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. A party may respond to another party's objections within fourteen days of being served with a copy; the rule does not provide for a reply. FED. R. CIV. P. 72(b).[3]

When resolving objections to a magistrate judge's recommendation, the district judge must make a *de novo* determination regarding any part of the recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C). Filing objections that address the primary issues in the case "advances the interests that underlie the Magistrate's Act, including judicial efficiency." *U.S. v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1059 (10th Cir. 1996). Objections must be timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *Id.* at 1060. Additionally, issues "raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also U.S. v. Garfinkle*, 261 F.3d 1030, 1030-31 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

Petitioner timely submitted eight objections. (CV Doc. 16 at 1-3). Although Respondent did not file objections, Respondent responded to Petitioner's Objections. (CV Doc. 18). The Court will address each objection in turn.

---

[3] The Federal Rules of Civil Procedure may be applied to the extent that they are not inconsistent with any statutory provisions or the Rules Governing Section 2255 Proceedings. Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

### a. *Whether Petitioner's crimes are crimes of violence*

Petitioner first objects to the Magistrate Judge's findings that Petitioner's predicate crimes are crimes of violence, but he does not identify any particular error or support his objection with any discussion. (CV Doc. 16 at 1). The PFRD accurately described the categorical approach to be used when analyzing whether a conviction is for a crime of violence, and correctly defined a "crime of violence" under the "elements clause" as one involving the use, attempted use, or threatened use of violent physical force. (CV Doc. 16 at 11-12). Finally, the PFRD recognized the law at the time that a *mens rea* of recklessness did not establish intentional "use of force." (CV Doc. 16 at 18-19). These were accurate statements of the governing law that were correctly applied, as will be further discussed below.

### b. *Whether the Magistrate Judge correctly applied the categorical approach*

Second, Petitioner broadly objects to the Magistrate Judge's categorical analysis and her reference to *Castleman v. United States*, 134 S. Ct. 1405 (2014). (CV Doc. 17 at 1-2). Specifically, Petitioner objects to the statement "it is impossible to cause bodily injury without using force 'capable of' producing that result." *Castleman*, 134 S. Ct. at 1416-17 (Scalia, J., concurring). Petitioner characterizes this quote as an "ends justify the means" form of "legal imagination." (CV Doc. 17 at 2-3).

In *Castleman*, the Supreme Court held that "indirect" application of force is still "use" of force. 134 S. Ct. at 1414-15. The Supreme Court reasoned that there is no meaningful difference between direct use of force, like kicking and punching, and indirect use of force, like poisoning or shooting a gun. *Id*. That is, administering a poison, infecting with a disease, and shooting a gun all involve "use" of force even

though the defendant does not directly apply force to a victim's body; rather the poison, disease, and bullet apply force. *Id.* ("That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter."). The *Castleman* court left open the question whether "causation of bodily injury necessarily entails violent force," but the court stated plainly "[i]t is impossible to cause bodily injury without applying force in the common-law sense." *Id.* at 1413, 1415; *see id.* at 1416-17 (Scalia, J., concurring) (stating "it is impossible to cause bodily injury without using force 'capable' of producing that result."). Thus, the question *Castleman* left open is whether the force used to cause bodily injury is significant enough to qualify as "violent force."

Given the Supreme Court's rationale, the Court finds the Magistrate Judge's reliance on *Castleman* appropriate. In his Motion, Petitioner argued his predicate convictions were not for crimes of violence because they could be committed by using force indirectly, for example by poisoning, exposing someone to hazardous chemicals, or placing a barrier in front of the victim's car. (CV Doc. 1 at 8, 11, 12). *Castleman* explicitly forecloses this argument. The Court therefore finds the Magistrate Judge did not err in citing and relying on *Castleman*.

  c. <u>Whether the Magistrate Judge correctly defined "violent force"</u>

Third, Petitioner states the PFRD "us[ed] the wrong standard" in discussing "use of force," "when the Court should be doing an analysis of whether there is significant use of force under *Johnson v. United States*, 559 U.S. 133, 140 (2010)." (CV Doc. 17 at 2). The Guidelines define "crime of violence" in part as any crime that "has as an element the use, attempted use, or threatened use of physical force." U.S.S.G. § 4B1.2(1)(i). "Physical force" means "violent force–that is, force capable of causing

6

physical pain or injury to another person." *Johnson*, 559 U.S. at 140. This means "strong," "substantial," or "violent" force–not "significant" force. *Id*. A "mere unwanted touching" does not suffice. *Id.* at 142. The Magistrate Judge cited these standards and appropriately identified the standard as "violent force" rather than "significant force." (CV Doc. 16 at 12). The Court therefore finds that the Magistrate Judge applied the correct standards.

   d. <u>Whether the Magistrate Judge erred by discussing whether federal second degree murder is a crime of violence</u>

Fourth, Petitioner objects to the fact that the Magistrate Judge evaluated whether federal second degree murder is a crime of violence despite the fact that Respondent did not address this issue in its underlying briefing. (CV Doc. 17 at 2). Petitioner argues that Respondent was required to answer each of the grounds raised in his Motion and that the Court should not consider this issue because Respondent did not contest whether second degree murder is a crime of violence. (CV Doc. 17 at 2). Petitioner cites Rule 5 of the Rules Governing Section 2255 Proceedings for the United States District Courts, which states that the United States must "address the allegations in the motion." Petitioner does not cite any authority for the proposition that a Magistrate Judge may not make findings on an uncontested issue or that the Court must ignore a Magistrate Judge's recommendations on an uncontested issue. Furthermore, the Court may *sua sponte* review the petition *de novo*. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985). Accordingly, the Court finds no error in the Magistrate Judge's consideration and recommendation on this issue.

   e. <u>Whether federal second degree murder is not a crime of violence because it may be committed with a reckless</u> mens rea

7

Fifth, Petitioner argues federal second degree murder is not categorically a crime of violence because it may be recklessly committed in the commission of a felony. (CV Doc. 17 at 2). As explained in the PFRD, federal second degree murder is defined as the unlawful killing of a human being committed with malice aforethought that is not otherwise first degree murder. 18 U.S.C. § 1111(a). "Malice aforethought" may be established by showing: (1) intent to kill other than deliberate premeditation; (2) intent to do serious bodily harm; (3) a depraved heart; or (4) the commission of an underlying felony. *U.S. v. Barrett*, 797 F.3d 1207, 1221-22 (10th Cir. 2015). In *United States v. Zuniga-Soto*, the Tenth Circuit held that a crime must require more than a reckless *mens rea* in order to be a crime of violence. 527 F.3d 1110, 1123-24 (10th Cir. 2008); *see also U.S. v. Armijo*, 651 F.3d 1226, 1234-37 (10th Cir. 2011) (holding reckless voluntary manslaughter not a crime of violence).

1. *Petitioner has waived this argument*

Previously, Petitioner argued that federal second degree murder is not a crime of violence because it does not require the use of violent physical force. (CV Doc. 1 at 12-13). Petitioner did not previously raise the theory that federal second degree murder could be recklessly committed and therefore is not a crime of violence. Because Petitioner argues this for the first time in his Objections, he has waived this theory. *See U.S. v. Garfinkle*, 261 F.3d 1030, 1030-31 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). Additionally, Petitioner does not support this argument with any discussion or citation to any case, leaving it no more than a "theoretical possibility" one can be convicted of federal felony

8

second degree murder with a reckless intent. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013). As discussed in the PFRD, Petitioner must do more than show a hypothetical possibility; he must show a "realistic probability" that his conviction is not for a crime of violence. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *U.S. v. Castillo*, 811 F.3d 342, 349 (10th Cir. 2015).

    *2. Crimes of violence may be committed with reckless intent*

Even if Petitioner had not waived this argument and he is correct that federal second degree murder may be committed with a reckless intent, the Tenth Circuit recently revisited its holding in *Zuniga-Soto* and held that reckless intent is sufficient to commit a crime of violence. *See U.S. v. Hammons*, 862 F.3d 1052 (10th Cir. 2017); *U.S. v. Pam*, No. 16-2171, __ F.3d __, 2017 WL 3481853 (10th Cir. Aug. 15, 2017). In so doing, the Tenth Circuit discussed the recent Supreme Court case *United States v. Voisine*, 136 S. Ct. 2272 (2016). In *Voisine*, the Supreme Court considered whether reckless conduct could support a conviction for a misdemeanor crime of violence, which requires the "use or attempted use of physical force." 136 S. Ct. at 2276; 18 U.S.C. § 921(a)(933)(A)(ii). The Supreme Court held that the word "use" in "use of force" does not apply "exclusively to knowing or intentional" crimes. *Id.* at 2278. Rather, the force used need only be volitional instead of involuntary. *Id.* at 2278-79. Put differently, the word "use" "is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional act." *Id.* at 1279. Because reckless conduct involves the "deliberate decision to endanger another," recklessness involves intentional conduct and may still qualify as "use of force." *Id.* at 1279-80.

9

The Tenth Circuit has applied *Voisine* in cases involving the ACCA, holding a statute "requiring only a reckless mental state would categorically involve the use of physical force." *Hammon*s, 862 F.3d at 1056. In *Pam*, the Tenth Circuit reemphasized that acting "willfully and with reckless disregard for the risk posed by that act may categorically involve the use of physical force." *Pam*, 2017 WL 3484853 at *12. As long as a defendant acts deliberately, reckless intent suffices to commit a crime of violence. *See id.*; *Hammons*, 862 F.3d at 1056. Accordingly, even if Petitioner is correct that federal second degree murder may be committed recklessly during the commission of a felony, it does not follow that federal second degree murder is not a crime of violence.

### 3. The Court will not utilize the modified categorical approach

In responding to this objection, Respondent asserts that the Magistrate Judge could have used the modified categorical approach in analyzing federal second degree murder. (CV Doc. 18 at 2). Respondent, therefore, invites the Court to inspect Petitioner's indictment and conclude Petitioner did not recklessly commit second degree murder. (CV Doc. 18 at 4). For the following reasons, the Court declines.

In order to determine whether a particular crime is a crime of violence, courts apply the "categorical approach." *Taylor v. U.S.*, 495 U.S. 575, 600 (1990). This approach looks only to the statutory elements of a crime, "rather than to the conduct of any particular defendant convicted of that crime." *U.S. v. McConnell*, 605 F.3d 822, 825 (10th Cir. 2010). However, if a statute lists elements in the alternative and thereby defines multiple crimes, courts apply the "modified categorical approach." *Johnson*, 559 U.S. at 144. Under the modified categorical approach, courts may examine the trial record, including charging documents, plea agreements, plea colloquy transcripts, jury

10

instructions, and verdict forms. *Id*. In this case, the Magistrate Judge applied the categorical approach in finding federal second degree murder is a crime of violence. (CV Doc. 16 at 11, 13-16).

In support of its argument to use the modified categorical approach, Respondent cites *United States v. Checora*, 155 F. Supp. 3d 1192, 1199 (D. Utah 2015), in which the District Court for the District of Utah applied the modified categorical approach in deciding that federal second degree murder is a crime of violence. The District Court reasoned that the concept of malice aforethought may be proven four different ways; therefore, the statute is broad enough to be divisible and the modified categorical approach is appropriate. *Id*. at 1198-99. The District Court examined the indictment, found that second degree murder could qualify as a crime of violence under some theories of malice aforethought, and denied the defendant's motion to dismiss. *Id*. at 1199-1201.[4]

More recent Supreme Court precedent discourages taking the *Checora* court's approach. In *United States v. Mathis*, 136 S. Ct. 2243 (2016), the Supreme Court distinguished between "elements" and "means" in a criminal statute. "'Elements' are the 'constituent parts' of a crime's legal definition–the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 136 S. Ct. at 2248 (quoting *elements of a crime*, Black's Law Dictionary (10th ed. 2014)). "Means," on the other hand, are "various factual ways of committing some component" of a crime. *Id*. at 2249.

---

[4] Notably, the *Checora* court seems to find that depraved heart and felony second degree murder do not qualify as crimes of violence for purposes of 18 U.S.C § 924(c). *Checora*, 155 F. Supp. 3d at 1198. ("Depraved heart malice aforethought requires only recklessness and second-degree felony murder only requires the intent to commit the felony."). Petitioner has not advanced these arguments here, and to the extent the *Checora* court believed recklessness would not suffice to commit a crime of violence, *Hammons* and *Pam* answer that it does.

11

With these definitions in mind, the Supreme Court considered an Iowa burglary statute that criminalized unlawful entry into "any building, structure, land, water, or air vehicle." *Id.* at 2250 (quoting Iowa Code § 702.12 (2013)). Because the location element criminalized unlawful entry into both structures and vehicles, the statute criminalized more than generic burglary as defined by federal law, which meant that Iowa burglary was not categorically a crime of violence. *Id.* The district and appeals courts acknowledged this, yet they both applied the modified categorical approach to determine how the particular defendant satisfied the location element, i.e. whether he burgled a structure or vehicle as a matter of fact. *Id.*

The Supreme Court reversed, stating a crime's elements are all that matters to the categorical approach. *Id.* at 2251. Whether or not a statute omits or specifies different means of committing the offense, the court has no license to "explore the facts of an offense, rather than to determine the crime's elements" and consider those alone. *Id.* The *Mathis* majority emphasized Supreme Court precedent, the text of the ACCA, Sixth Amendment concerns, and avoiding unfairness to defendants as reasons for this distinction. *Id.* at 2252-53. Practically speaking, if there are multiple ways of violating one statute, as opposed to one statute defining multiple crimes, the court is limited to analyzing the elements only and not the means of how a defendant committed the crime. *Id.* at 2253-54.

In this case, *Mathis* weighs against utilizing the modified categorical approach. Federal second degree murder has only two elements: (1) the unlawful killing of a human being; (2) with malice aforethought. *U.S. v. Chanthandara*, 230 F.3d 1237, 1258 (10th Cir. 2000). Though there are four factual means of proving malice aforethought,

12

the Court must examine the two elements only. *Mathis*, 136 S. Ct. at 2253 ("Whether or not mentioned in a statute's text, alternative factual scenarios remain just that–and so remain off-limits . . ."). Respondent's invitation to consider how Petitioner satisfied the malice aforethought element is similar to the *Mathis* courts determining how the defendant satisfied the locational element. Consequently, this approach runs afoul of *Mathis*' proscription.

Moreover, the indictment in this case is not helpful. The indictment charges Petitioner with unlawfully killing "with malice aforethought, perpetrated by willful, deliberate, malicious, and premeditated means." (CV Doc. 18-1 at 1). This tracks the definition of first degree murder. § 1111(a) ("every murder perpetrated by . . . willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree."). However, Petitioner was acquitted of first degree murder and found guilty of second-degree murder as a lesser-included offense. (CR Docs. 96, 97). The indictment does not answer how the jury found that the malice aforethought element was satisfied for second-degree murder. For the foregoing reasons, the Court declines to apply the modified categorical approach and consider Petitioner's indictment for proof of his malice aforethought.

  f. <u>Whether assault with a dangerous weapon is a crime of violence</u>

Petitioner's sixth objection is that assault with a dangerous weapon under 18 U.S.C. § 113(a) does not qualify as a crime of violence "because the least of the acts criminalized does not meet the standards of significant use of force under *Johnson v. United States*, 559 U.S. 133, 140 (2010)." (CV Doc. 17 at 2). Again, Petitioner does not support this objection by citing any specific error. However, in his Motion, Petitioner

argued assault with a dangerous weapon does not require violent force because it may be committed indirectly by poisoning or exposing to anthrax. (CV Doc. 1 at 11).

As described in the PFRD, assault with a dangerous weapon may be "attempted battery" or "apprehension-causing" assault. (CV Doc. 16 at 16) (citing *U.S. v. Gauvin*, 173 F.3d 798, 802 (10th Cir. 1999)); *see also U.S. v. Calderon*, 655 F.2d 1037, 1038 (giving "assault" its common law definition of an attempted battery or putting another in reasonable apprehension of a battery). The Tenth Circuit has held that both "attempted battery" and "apprehension-causing" assault with a dangerous weapon are crimes of violence. In *United States v. Ramon Silva*, the Tenth Circuit held apprehension-causing assault with a deadly weapon is a crime of violence. 608 F.3d 663, 670 (10th Cir. 2010). Then, in *United States v. Mitchell*, the Tenth Circuit held that attempted battery with a dangerous weapon qualifies as a crime of violence because it necessarily involves the attempted use of physical force. 653 Fed. Appx. 639, 645 (10th Cir. 2016) (unpublished). To the extent Petitioner argues again that poisoning and exposure to hazardous chemicals do not constitute violent force, *Castleman* forecloses any argument that those methods do not require "use" of force. *Castleman*, 134 S. Ct. at 1414-15 (holding poisoning and exposing to hazardous chemicals constitute "use" of force). Further, it is difficult to imagine how Plaintiff's examples of anthrax and the radioactive isotope polonium-210 are not "capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. Accordingly, the Court agrees federal assault with a dangerous weapon is a crime of violence.

> g. <u>Whether New Mexico voluntary manslaughter may be committed with a reckless intent</u>

Next, Petitioner objects to the Magistrate Judge's conclusion that voluntary manslaughter in New Mexico cannot be committed recklessly. (CV Doc. 17 at 2-3). Petitioner cites two cases in support: *State v. Dominguez*, 2005-NMSC-001, ¶ 11, 137 N.M. 1, 106 P.3d 563, and *State v. Montoya*, 2013-NMSC-020, 306 P.3d 426. Both cases involve convictions for manslaughter and shooting at or from a motor vehicle, and Petitioner represents both cases stand for the proposition that a defendant may be convicted for voluntary manslaughter with a reckless *mens rea*. (CV Doc. 17 at 2-3).

Here again, *Hammons* and *Pam* resolve this issue against Petitioner. As discussed earlier, reckless intent is sufficient to "use" force and commit a crime of violence. *Hammons*, 862 F.3d at 1056; *Pam*, 2017 WL 3484853 at *12. So, even assuming Petitioner is correct that New Mexico voluntary manslaughter may be committed with reckless intent, it does not follow that voluntary manslaughter is not a crime of violence. Furthermore, New Mexico voluntary manslaughter is typically a general intent crime where the defendant at least "intends to cause the harmful act." *State v. Abeyta*, 1995-NMSC-051, ¶ 24, 120 N.M. 233, 901 P.2d 164. A defendant cannot commit New Mexico voluntary manslaughter accidentally or inadvertently. *See State v. Lopez*, 1968-NMSC-092, ¶ 14, 79 N.M. 282, 442 P.2d 594 ("That an accidental killing will not support a conviction of voluntary manslaughter goes without saying."); *State v. Pruett*, 1921-NMSC-110, ¶ 47, 27 N.M. 576, 203 P. 840 (holding instruction on involuntary manslaughter erroneous when evidence indicated homicide was intentional). Given this authority, the Court concludes the intent required to commit voluntary manslaughter in New Mexico is sufficient to commit a crime of violence.

    h. <u>Whether New Mexico voluntary manslaughter requires violent force</u>

Finally, Petitioner contends that New Mexico voluntary manslaughter does not require violent force and that the PFRD did not address the arguments he developed in his Motion. (CV Doc. 17 at 3). In his Motion, Petitioner first argued that New Mexico voluntary manslaughter does not necessarily entail violent physical force. (CV Doc. 1 at 7, 9). Specifically, Petitioner claimed voluntary manslaughter may be committed through poisoning, asphyxiation through exposure to carbon monoxide, starving, withholding medical care, or "any other number of methods." (CV Doc. 1 at 8). Second, Petitioner claimed New Mexico voluntary manslaughter may be committed with a reckless intent and therefore is not a crime of violence. (CV Doc. 1 at 8-9). Petitioner repeated these arguments in his Reply. (CV Doc. 13 at 7-10).

In the PFRD, the Magistrate Judge began her discussion of New Mexico voluntary manslaughter by explaining the intent requirement for crimes of violence. (CV Doc. 16 at 17-19). After discussing the requirement and New Mexico case law, she concluded New Mexico voluntary manslaughter cannot be committed recklessly. (CV Doc. 16 at 20-22). Thus, the Magistrate Judge addressed Petitioner's intent argument. And as just reiterated, a reckless *mens rea* is sufficient to commit a crime of violence. *See Hammons*, 862 F.3d at 1056; *Pam*, 2017 WL 3484853 at *12.

After discussing intent, the PFRD considered the force necessary to commit voluntary manslaughter and referred to its earlier discussion of federal second degree murder, stating "voluntary manslaughter must also be a crime of violence because it necessarily involves the use of violent physical force." (CV Doc. 18 at 22). Petitioner's arguments about indirect force mirrored his earlier arguments about both second

16

degree murder and assault with a dangerous weapon. The PFRD therefore also addressed Petitioner's violent force argument.

While Petitioner argued voluntary manslaughter is not a violent crime because it may be committed through indirect means like poisoning, starving, and exposure to carbon monoxide, *Castleman* states clearly that those methods are still "uses" of force. *Castleman*, 134 S. Ct. at 1414-15. Additionally, it is difficult to imagine force capable of killing a human being that is not "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140; *see Castleman*, 134 S. Ct. at 1416-17 (Scalia, J., concurring) (stating as a matter of logic "it is impossible to cause bodily injury without using force 'capable of' producing that result"). The Court therefore concludes that New Mexico voluntary manslaughter necessarily involves the use of violent force and, consequently, is a crime of violence.

### III.  Conclusion

For the foregoing reasons, the Court finds that the Magistrate Judge conducted the proper analysis and correctly concluded Petitioner's predicate crimes were all crimes of violence under the elements clause. Petitioner's objections are overruled.

**IT IS THEREFORE ORDERED** that Judge Garza's *Proposed Findings and Recommended Disposition*, (CV Doc. 16), should be **ADOPTED**, and Petitioner's *2255 Motion to Vacate Illegal Career Offender Sentence Under* Johnson v. United States, (CV Doc. 1), be **DENIED.**

_____
THE HONORABLE M. CHRISTINA ARMIJO
UNITED STATES CHIEF DISTRICT JUDGE